IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| STEVEN RAY RITCHIE,<br><br>Petitioner,<br><br>vs.<br><br>MIKE BATISTA; LEROY KIRKEGARD,<br><br>Respondents. | Cause No. CV 09-177-M-DWM-JCL<br><br>FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |

This case comes before the Court on Petitioner Steven Ritchie's application for a writ of habeas corpus under 28 U.S.C. § 2254.

On June 24, 2010, the petition was dismissed with prejudice as time-barred. Ritchie appealed. Based on an intervening decision, *Bills v. Clark*, 628 F.3d 1092 (9th Cir. 2010), the Court of Appeals remanded "for consideration of equitable tolling pursuant to the heavily fact-dependent *Bills* standard." Mem. at 2, *Ritchie*, No. 10-35666 (9th Cir. May 10, 2012) (Doc. 30).

Counsel Colin Stephens was appointed to represent Ritchie. Assistant Attorney General Mark Fowler represents Respondents ("the State"). On October 2, 2013, the Court held an evidentiary hearing. Ritchie and his ex-wife, Gina, testified. The parties have filed the depositions of Leonard Mihelich, Associate Warden at Montana State Prison (Doc. 78-1), and Dr. Paul Bach, who evaluated

1

Ritchie in 2006 (Doc. 80-1), as well as stipulations and stipulated exhibits (Doc. 64). The parties also submitted briefs, Ritchie's with two additional exhibits, on November 28, 2013.

Having reviewed the record and considered the evidence and testimony presented, the Court finds that Ritchie's petition is time-barred.

**I. Background**

Ritchie challenges convictions incurred in Ravalli County in 2005 for burglary and felony theft. Pet. (Doc. 1) at 4. He was charged in two separate cases. One case involved burglary, felony theft, and forgery. The other involved assault with a weapon, partner/family member assault and criminal mischief. The parties reached a plea agreement addressing both cases. Ritchie pled guilty to burglary, felony theft, and criminal mischief in exchange for dismissal of the other charges and the State's agreement not to have Ritchie sentenced as a persistent felony offender. Plea Agreement (Doc. 1-1 at 11-12). On August 3, 2005, he was sentenced to serve ten years in prison, with no parole for five years. Pet. (Doc. 1) at 3-4.

The federal petition relates only to the burglary and theft convictions. Ritchie contends that trial counsel Keithi Worthington was ineffective because she did not adequately investigate his competence to enter a guilty plea and because she did not "address" his motion to withdraw his guilty plea in a timely manner.

He also claims that the trial court did not ensure there was a factual basis for his guilty pleas to burglary or theft or that he understood the consequences of pleading guilty. Pet. at 1-2.

## II. The *Bills* Standard

*Bills* sets the standard governing claims for equitable tolling based on a petitioner's mental impairment. It requires Ritchie to show both:

1. he had a mental impairment so severe that he was either:

    a. unable rationally or factually to understand the need to timely file; or

    b. unable personally to prepare a petition and file it; and

2. he acted diligently "in pursuing the claims to the extent he could understand them," but his mental impairment likely made him unable to file on time, given the totality of the circumstances including consideration of reasonably available access to assistance.

*Bills*, 628 F.3d at 1099-1100 & n.3 (citing *Harris v. Carter*, 515 F.3d 1051, 1055 n.5 (9th Cir. 2008)).

## III. How the Limitations Period Ran in Ritchie's Case

The federal limitations period commences, runs, is tolled by statute or by equity, and is eventually stopped by the filing of a federal habeas petition. Its mechanics mean that time starts and stops intermittently. *See, e.g.*, *Ramirez v. Yates*, 571 F.3d 993, 997-1000 (9th Cir. 2009). "[A] court must first determine whether a petition was untimely under the statute itself" before considering

3

whether there is a need for equitable tolling. *Jorss v. Gomez*, 311 F.3d 1189, 1192 (9th Cir. 2003).

Previously, the Court's calculation of the limitations period did not account for sentence review in the manner adopted in *Rogers v. Ferriter*, No. CV 12-13-BU-DLC-JCL (D. Mont. judgment entered Aug. 2, 2013), *appeal pending*, No. 13-35790 (9th Cir. docketed Aug. 29, 2013). While the Court accepts the parties' stipulations of fact, *see* Stipulations (Doc. 64) at 2-5, the legal meaning of the facts is altered by *Rogers*. The Court believes the following table reflects the correct commencement, running, and statutory tolling of the federal limitations period in Ritchie's case, without equitable tolling.

| **Date(s)** | **Event** | **Consequence** |
|---|---|---|
| 8-29-05 | Judgment is entered in the trial court (Doc. 38-1 Entry 31). Ritchie does not appeal. | |
| 10-6-05 | Ritchie applies to Sentence Review Division ("SRD") (Doc. 38-1 Entry 39) for review of his sentence. | |
| 10-28-05 | Ritchie's conviction becomes final. Mont. R. App. P. 5(b) (2005); *Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 653-54 (2012). | The federal limitations period commences, 28 U.S.C. § 2244(d)(1)(A), but is immediately tolled under § 2244(d)(2) by pending sentence review application. *Rogers v. Ferriter*, 2013 WL 3990693 at *2-*3, *11 (D. Mont. Aug. 2, 2013). |

| 11-10-07 | Ritchie files a pro se petition for post-conviction relief in trial court. | [*See* 12-11-07.] |
|---|---|---|
| 11-27-07 | By letter, SRD advises Ritchie to notify them within 60 days of conclusion of other state proceedings (Doc. 38-29). | Tolling under § 2244(d)(2) stops, because SRD will never act unless Ritchie timely notifies them. *Rogers*, 2013 WL 3990693 at *13. |
| 11-28-07 | This is the first day after § 2244(d)(2) tolling stops. | **Day 1 of federal limitations period ("SOL").** |
| | Time runs under the SOL. | **<< 13 days >>** |
| 12-11-07 | Ritchie's post-conviction petition is dismissed as waived, unverified, and time-barred. | Postconviction petition does not support tolling under § 2244(d)(2). *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005). |
| + 60 days | From the close of post-conviction on 12-11-07, Ritchie has 60 days to notify SRD of its termination. | Time is tolled under § 2244(d)(2) for 60 days while Ritchie has opportunity to renew SRD application. *Rogers*, 2013 WL 3990693 at *13. |
| 2-11-08[1] | Ritchie does not notify SRD that he intends to proceed there. This is the last day of tolling under § 2244(d)(2) for sentence review under *Rogers*. | |
| 2-12-08 | There are 351 days remaining in the SOL. | **Day 14 of SOL** |
| **1-29-09** | Expiration of SOL absent equitable tolling. | **Day 365 of SOL** |

---

[1] The actual date was February 9, 2008, but that was a Saturday. The Court assumes Ritchie could not notify SRD on the weekend. *See* Fed. R. Civ. P. 6(a); *Patterson v. Stewart*, 251 F.3d 1243, 1244-46 (9th Cir. 2001).

|        | Time runs in excess of the SOL.                                                            | **<< + 31 days >>**              |
|--------|--------------------------------------------------------------------------------------------|----------------------------------|
| 3-2-09 | Ritchie files a pro se petition for writ of habeas corpus in the Montana Supreme Court.    | Time is tolled under § 2244(d)(2). |
| 6-9-09 | The state habeas petition is denied on the merits.                                         | Tolling stops under § 2244(d)(2). |
|        | Time runs in excess of the SOL.                                                            | **<< + 166 days >>**             |
| 11-23-09 | Ritchie files his federal petition (Pet. (Doc. 1) at 51).                                | SOL stops.                       |

## IV. Analysis

Ritchie has the burden of establishing his entitlement to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 649 (2010).

**A. Severe Mental Impairment**

Dr. Paul Bach, a clinical neuropsychologist, evaluated Ritchie in November 2006 in connection with federal criminal proceedings against him. *See* Pet. Ex. K (Doc. 1-2 at 17-22) ("Bach Report"). In that report, Dr. Bach found "no positive evidence in this evaluation or previous ones that [Ritchie] is competent." Bach Report at 6 para. 3.[2] Dr. Bach's report indicates that, while Ritchie appeared to have at least some memory problems, he probably did not respond truthfully to testing intended to assess his memory function. For example, Dr. Bach pointed out

---

[2] A petitioner is presumed competent unless he is shown to be incompetent. Two other evaluations were done in the course of the same proceedings. Both found Ritchie competent to assist in his defense.

that at a previous evaluation at a federal Bureau of Prisons facility in Los Angeles, one test was "discontinued because Mr. Ritchie was unable to give his full name and gave extended pauses between expressing his first and last name." *Id.* at 2 para. 2. But, in deposition in this matter, Dr. Bach explained:

> So on the one hand he was jerking me and probably the other evaluators around in terms of what information biographical [sic] he was willing to provide. That's my opinion. I don't know that, but I believe that.
> On the other hand, the fact that he produced cognitive results so consistent across three evaluations from 2003 to 2006, that's fairly compelling these are real levels of impairment.

Bach Dep. (Doc. 80-1) at 18:25-19:8.

Those "consistent" cognitive results showed remarkably low intellectual functioning and IQ, at or below, even well below, the first percentile. *See id.* at 20:10-25:12. As to Ritchie's ability to reason or conceptualize, Dr. Bach found him severely impaired. Dr. Bach explained that impairment of this nature would create problems "with such things as keeping deadlines straight" and with "conforming one's behavior to direct instructions, written, verbal, or remembered." *Id.* at 26:10-27:1. Further, Ritchie received social security disability benefits for some time prior to his detention on the charges underlying his petition. Although he is able to read and write, *see, e.g.*, Evid. Hr'g Tr. at 29:16-20, 55:22-56:1, 62:17-21, 64:19-65:8, it is reasonably clear that his mental capacity is limited in some significant respects.

7

But the Court's observations of Ritchie on the witness stand created an entirely different impression. Not only did Ritchie remember many facts and details when motivated to do so, he related them clearly in his testimony. He responded to questions appropriately, showing not only that he understood the question but also, frequently, the point in asking it. *See, e.g.*, Evid. Hr'g Tr. (Doc. 85) at 56:20-57:13, 58:18-22, 61:17-62:7, 67:3-4, 70:15-72:23, 78:8-15, 79:18-80:5. It is difficult to imagine that the person who testified at the hearing was functioning at a lower level of reasoning and conceptualization than 99% of the general population; or, if Ritchie was functioning at so low a level, then no more is required to make a person capable of taking steps to assert his legal rights. Ritchie's testimony indicated he would have been able to work with others to prepare and file a habeas petition.

In addition, nothing in Dr. Bach's evaluation or in the testimony presented at the hearing suggests that Ritchie's cognitive or intellectual functioning was subject to change. In other words, there is no evidence Ritchie's functioning may have been worse while the federal limitations period was running than it is now.

There is no indication Ritchie was "unable rationally or factually to personally understand the need to timely file." *Bills*, 628 F.3d at 1100. Although Dr. Bach attested that Ritchie would have difficulty in executing a timely filing, there is no evidence that Ritchie could not understand what a time limitation is or

that he must file to avoid a time-bar. To be clear, the Court is not finding that Ritchie *actually knew* there was a time bar, only that he was capable of understanding the concept and capable of understanding the reality of its application to him. *Compare Forbess v. Franke*, __ F.3d __, 2014 WL 1509025 at *2 (9th Cir. Apr. 18, 2014).

Ritchie's difficulties in executing the concepts he was capable of understanding probably made him unable "*personally* to prepare a habeas petition and effectuate its filing." *Bills*, 628 F.3d at 1100 (emphasis added). Although this Court finds his level of impairment functionally indistinguishable from the level of impairment facing many, perhaps most, prisoners attempting to challenge their convictions through the federal habeas process, he meets the second prong of the *Bills* test. He lacked familiarity with procedural and substantive law, he could not have acquired that familiarity quickly or thoroughly enough by "reading up" on it, and he could not have prepared a petition by himself.

**B. Diligence and Causation Under the Totality of the Circumstances**

Having a mental impairment that likely prevented him from preparing and filing a petition by himself is not sufficient to support equitable tolling. Ritchie must also show that he diligently pursued his claims but was likely unable to file on time, "given the totality of the circumstances including consideration of reasonably available access to assistance." *Bills*, 628 F.3d at 1100 & n.3.

9

### 1. Nature of the Impairment

The record amply demonstrates that any mental impairment Ritchie had did not "prevent[] him from locating assistance or communicating with or sufficiently supervising any assistance actually found." *Id.* at 1101. As he said, "I went gung-ho trying to get any help I could get." Evid. Hr'g Tr. at 72:11-12. "Every time I got an inmate that said that he could help me if I had something to show him to read, I would write a letter and I even got them to write letters for me." *Id.* at 43:2-5; *see also id*. at 51:13-20, 54:19-55:9. "[F]rom the ten seconds after [the judge] said I was guilty of something," he was aware of the need to do something to "get this thing appealed." Evid. Hr'g Tr. at 55:5-9.

The questions are whether assistance was reasonably available and whether the persons who assisted Ritchie had what they needed in order to help him.

### 2. Access to Case Materials

The most salient point relevant to the totality of the circumstances is Ritchie's contention that he did not have access to any of the materials of his case file. A prisoner's lack of access to his case materials unquestionably interferes with his ability to file. In fact, lack of access to case materials is itself recognized as a basis for equitable tolling, wholly apart from severe mental impairment. *Espinoza-Matthews v. California*, 432 F.3d 1021, 1027-28 (9th Cir. 2005); *Spitsyn v. Moore*, 345 F.3d 796, 801 (9th Cir. 2003). And, because Ritchie's mental impairment was

severe enough to prevent him from preparing a petition on his own, it was especially important for him to be able to show documents from his case file to persons who could assist him.

Ritchie repeatedly and unequivocally testified that he never had access to his case file. Evid. Hr'g Tr. at 33:4-6, 41:19-21, 42:21-43:10, 44:11-14, 45:6-15, 79:18-80:5; *see also id.* at 82:24-83:23.[3] His testimony on that point was not credible.

Someone had access to his case information in time to prepare a motion to withdraw his guilty plea in 2005[4] as well as a state habeas petition in 2009. Ritchie testified he "had an inmate somehow get on the computer and find something that's got to do with me." Evid. Hr'g Tr. at 44:15-19. There is no evidence showing what this resource was. The Court is not aware of anything of that nature that was available for cases prosecuted in Ravalli County in 2005 or 2006; anything that became available in 2008 or 2009; or for that matter, anything that is available today.

Ritchie's state habeas petition, filed in the Montana Supreme Court on

---

[3] Ritchie's habeas counsel also represents that trial counsel released the file to him in November 2012. *Id.* at 93:3-8; Ritchie Br. (Doc. 88) at 14 & Ex. A (Doc. 88-1) at 1. Transfer of the physical file from one attorney to another is one thing; providing copies of documents in the file is another.

[4] Ritchie also submitted a postconviction petition to the trial court. Unfortunately, the trial court did not require it to be filed in the record of the case because it was not "an original petition," presumably meaning it was a copy, and it was unverified. Order Denying Postconviction Relief (Doc. 38-30) at 1.

11

March 2, 2009, was obviously prepared by someone who had access to the documents of Ritchie's case. The State represents that its Exhibit 38, filed in connection with its Answer (Doc. 37), consists of the record Ritchie filed with his habeas petition in the Montana Supreme Court. The state habeas petition sets forth statements of fact in support of each claim for relief, and each statement is accompanied by citations to documents from the state court's file. *See, e.g.*, State Habeas Pet. at 6-12, 14-15, 22, 26, 29-30, 32, 37-39, 43, 47-49, *Ritchie v. Ferriter*, No. OP 09-0120 (Mont. filed Mar. 2, 2009) (Doc. 38-37 at 8-14, 16-17, 24, 28, 31-33, 34, 39-41, 45, 49-51); Record of Exhibits *passim*, *Ritchie*, No. OP 09-0120 (Mont. filed Mar. 2, 2009) (Doc. 38-38 at 1-100); *see also* http://supremecourt docket.mt.gov (accessed May 15, 2014) (docket entry noting "bound record of exhibits"); Mot. to Proceed at 5, *Ritchie*, No. OP 09-0120 (Mont. filed Mar. 2, 2009) (minute entry from state court Jan. 28, 2005). Wherever it came from, and whether it was counsel's case file or not, this substantial stack of information was plainly sufficient to provide a clear understanding of the history of Ritchie's case. It is impossible to find that Ritchie never had access to his case file, as he repeatedly claimed.

If there were other evidence showing that Ritchie first gained access to his case materials sometime after August 27, 2008, *see* Stipulated Ex. 1 (Doc. 64-2) at 3, when he was transferred to the low side of Montana State Prison, he might still

12

be entitled to equitable tolling sufficient to make his filing timely. But not only is there no evidence other than Ritchie's testimony, there is actually evidence to the contrary. Ritchie testified that, when he was at the Montana State Prison in Deer Lodge in 2005, "[s]omebody helped me file a motion to withdraw my plea." Evid. Hr'g Tr. at 34:9-14. That motion, which was filed in the trial court on December 14, 2005, demonstrates detailed knowledge of the terms of the plea agreement and of what was said and done at sentencing. *See* Plea Agreement at 2 (Doc. 38-38 at 31); Minute Entry at 1-2 (Doc. 38-38 at 69-70); Judgment at 3-4 ¶ 2 (Doc. 38-38 at 61-62); Mot. to Withdraw Guilty Plea (Doc. 38-19) at 3-4.

Ritchie has the burden of proving he is entitled to equitable tolling. The State has no burden to show when Ritchie had or obtained or lost and regained his case file. Other than Ritchie's testimony, which is not credible, there is no evidentiary support for an inference that the persons whose assistance he needed in order to file a federal habeas petition were unable to review his case materials.

### 3. Access to Legal Resources and/or Assistance from Others

The Court accepts Ritchie's assertion that it would not do him much good to provide him access to a law library, because he could not have used its resources to his benefit. The question, therefore, is whether had had access to the assistance of others.

The parties dispute the conditions under which Ritchie was able to obtain

that assistance. It is clear, however, that during Ritchie's incarceration, people at Montana State Prison, designated as "offender legal workers," were available to assist inmates in the law library. DOC Policy re: Offender Legal Activities (Doc. 88-2) at 1 ¶ V.A(1)(d), C(4), (E)(1). Ritchie testified that other inmates helped him even though policy prohibited them from doing so. *E.g.*, Evid. Hr'g Tr. at 47:22-48:17. At any rate, Ritchie does not show that designated offender legal workers were not available or that he did not otherwise have sufficient access to assistance.

Further, Ritchie in fact had assistance from others on at least three occasions: when he filed his motion to withdraw his guilty plea in December 2005; when he attempted to file a petition for postconviction relief in the trial court on November 10, 2007; and when he filed a state habeas petition on March 2, 2009. If Ritchie truly could not file on his own, then he must have had assistance to file each of these documents.

The Court can only find that Ritchie had reasonable access to the assistance of others throughout his time in state as well as federal custody. While he probably did not have access to assistance at certain times – for instance, while he was in the Martz Diagnostic Intake Unit from August 12, 2008, to August 27, 2008, Stipulated Ex. 1 (Doc. 64-2) at 3, or while he was being transferred from one local jail to another or to BOP facilities for evaluation during the course of his prosecution in federal court – those periods of time were brief and were normal,

unremarkable incidents of imprisonment.

## V. Running of the Limitations Period in Light of the Evidence

Ritchie was detained in various locations while the federal prosecution was pending. Despite being in custody on pending federal charges between February 15, 2006, and July 24, 2008, *see* Stipulated Ex. 1 (Doc. 64-1) at 2 ("Out of State Court"), he filed a petition in the state trial court for postconviction relief on November 10, 2007. At that time, the federal limitations period as to Ritchie's state conviction had not begun to run, because it was tolled under 28 U.S.C. § 2244(d)(2) by Ritchie's application for sentence review.

But the federal limitations period began running on November 28, 2007, the day after the SRD notified Ritchie that it would not act on his application unless he notified them within 60 days of the termination of his state postconviction proceedings. As to the time he was in custody on pending federal charges, Ritchie testified that he "didn't know anything about the law, habeas corpus." Evid. Hr'g Tr. at 39:5-40:18. While this lack of knowledge is certainly understandable, it was not related to any mental impairment and does not support equitable tolling. He had access to assistance at that time, as evidenced by his submission of a postconviction petition to the trial court, and there is no reason, other than his own incredible testimony, to believe he had no access to the record of his state court proceedings.

Federal time ran against Ritchie for 13 days from November 28, 2007, to December 11, 2007. On that day, when the trial court dismissed his postconviction petition, Ritchie had a 60-day window of opportunity to reactivate his application for sentence review. The federal limitations period was tolled for those 60 days (as it would be tolled for an unused period of time to appeal or to file a petition for *certiorari* in the U.S. Supreme Court). As Ritchie did not reactivate his sentence review application, the federal limitations period began to run again on February 12, 2008.

Ritchie's federal prosecution concluded and he was returned to the custody of state authorities at the Deer Lodge County Jail on July 24, 2008. The federal limitations period was still running when Ritchie returned to Montana State Prison on August 12, 2008, and was transferred from the Martz Diagnostic Intake Unit to the low-security side of the prison on August 27, 2008. Mihelich Dep. (Doc. 78-1) at 7:8-13, 11:17-14:19, 17:7-19; Stipulated Ex. 1 (Doc. 64-2) at 3. At that point, Ritchie had 154 days to file his federal petition. He did not file until November 23, 2009. Even with 100 days' tolling for his state habeas petition, he filed 197 days too late.

Ritchie may well have known nothing of a federal limitations period specifically, or the availability of federal habeas corpus relief generally, until well after the expiration of the federal limitations period on January 29, 2009. But he

16

was capable of understanding that judicial relief might be available and that time limitations might apply to his case. He realized he needed assistance, and he obtained it. There is no credible evidence that he lacked access to his case materials. His situation is not distinguishable in principle from that of another prisoner who is capable of preparing and filing his own petition but does not realize he can do so or who makes a mistake in calculating his time to file. Ritchie's mental impairment was not the cause-in-fact of his late filing. He is not entitled to equitable tolling under the *Bills* test.

## VI. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct.

17

641, 648 (2012) (quoting *Slack*, 529 U.S. at 484).

Ritchie's petition challenges the voluntariness and intelligence of his guilty plea. He was not asked to describe what he stole from the home he entered, and there is no indication in either the plea colloquy or the plea agreement that he took things worth more than $1,000.00 in market value. In addition, Ritchie did not admit he intended to do anything inside the home that would have amounted to the commission of a felony. Ritchie's claims as to both the theft and the burglary charges meet the relatively low threshold of 28 U.S.C. § 2253(c)(2).

As to the procedural ruling, the Court does not see a meaningful distinction between Ritchie and other prisoners who face the daunting task of figuring out when and how to file a habeas petition in federal court. But reasonable jurists could disagree, particularly in light of the fact that, if Ritchie is entitled to equitable tolling throughout the pendency of the federal proceedings against him, then his federal petition challenging his state convictions was timely filed without equitable tolling.

A COA should be granted on the issues of whether Ritchie is entitled to equitable tolling and whether the federal petition was otherwise timely filed.

Based on the foregoing, the Court enters the following:

**RECOMMENDATION**

1. Ritchie's petition (Doc. 1) should be DISMISSED WITH PREJUDICE as

time-barred.

2. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be GRANTED on the issues of whether Ritchie is entitled to equitable tolling and whether the federal petition was otherwise timely filed.

**NOTICE OF RIGHT TO OBJECT
TO FINDINGS & RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT**

The parties may object to this Findings and Recommendation within 14 days.[5] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

DATED this 27th day of May, 2014.

                                              */s/ Jeremiah C. Lynch*
                                              Jeremiah C. Lynch
                                              United States Magistrate Judge

---

[5] As this deadline allows a party to act within 14 days after the Findings and Recommendation is "served," Fed. R. Civ. P. 6(d) applies, and three days are added after the time would otherwise expire.