

**FILED**

NOV 0 7 2016

Clerk, U S District Court
District Of Montana
Missoula

STEVEN RAY RITCHIE,

        Petitioner,

vs.

MIKE BATISTA; LEROY
KIRKEGARD,

        Respondents.

Cause No. CV 09-177-M-DWM-JCL

FINDINGS AND
RECOMMENDATION OF U.S.
MAGISTRATE JUDGE

This case comes before the Court on Petitioner Steven Ritchie's application

for a writ of habeas corpus under 28 U.S.C. § 2254.

Ritchie contends:

1.     Trial counsel violated Ritchie's Sixth Amendment right to the
effective assistance of counsel because she did not adequately
investigate his competency before negotiating a plea agreement.

2.     The trial court violated Ritchie's right to due process by
accepting his guilty plea to burglary without ensuring he
understood the elements.

3.     The trial court violated Ritchie's right to due process by
accepting his guilty plea to theft without ensuring the factual
basis was adequate.

4.     Trial counsel violated Ritchie's Sixth Amendment right to the
effective assistance of counsel because she did not address
Ritchie's motion to withdraw his guilty plea, despite being
ordered to do so by the trial court.

Pet. (Doc. 1) at 1-2.[1]

The parties previously agreed to "limited discovery and factual development of the claims," Joint Prop. Schedule (Doc. 103) at 2, followed by "submission of briefs on all outstanding issues," *id.* at 3. They agreed the Court should first determine whether any or all of Ritchie's claims are procedurally barred and then decide the merits of any claims not barred as well as any motions addressing Claims 2 and 3. *Id.* at 4-6. Neither party requested an evidentiary hearing or filed a motion regarding Claim 2 or 3; only briefs were filed. Therefore, the entire matter is ready for disposition.

## I. Claim 4

As a freestanding claim for relief under 28 U.S.C. § 2254, Claim 4 lacks legal foundation. The federal constitutional right to the effective assistance of counsel extends through a defendant's first level of direct review as of right and no further. *See Pennsylvania v. Finley*, 481 U.S. 551, 555-57 (1987); *Johnson v. Avery*, 393 U.S. 483, 488 (1969).

Ritchie had no cognizable federal right to the effective assistance of counsel in filing a post-judgment motion to withdraw his guilty plea. Even assuming Ritchie is correct that Worthington disobeyed the trial court's order to file an appropriate motion, disobeying a court order (while not recommended) does not

---

[1] The parties renumbered and reorganized the claims in their joint proposed schedule (Doc. 103) at 1, but they are the same claims.

violate constitutional rights of the person represented. Therefore, as a claim for federal habeas relief, Claim 4 should be denied because it does not allege a violation of federal law. 28 U.S.C. § 2254(a).

## II. Claims 1, 2, and 3

For the reasons explained below, Claims 1, 2, and 3 should be dismissed with prejudice as procedurally defaulted without excuse.

### A. Exhaustion and Default

State courts are co-equal adjudicators, with the federal courts, of federal constitutional issues. For that reason, a person who claims that a state's criminal judgment was obtained in violation of federal constitutional law must give the state courts the first opportunity to consider his claims—that is, he must "exhaust" the judicial remedies made available to him by the State. 28 U.S.C. § 2254(b)(1)(A), (c); *Rose v. Lundy*, 455 U.S. 509, 520 (1982).

The exhaustion requirement would not mean much if a state prisoner who failed to comply with it could simply start from scratch in federal court. *See, e.g.*, *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). So, when a petitioner does not properly exhaust his claims in state court before asking a federal court to consider them, a penalty is imposed: the federal court deems the claims procedurally defaulted, meaning they are barred and cannot be heard on their merits unless the petitioner first shows a legitimate reason to excuse his failure to present them in

3

state court. *See Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Smith v. Baldwin*, 510 F.3d 1127, 1137-39 (9th Cir. 2007) (en banc).

Here, the question is whether Ritchie properly exhausted Claims 1, 2, or 3 in state court. If not, they are barred in federal court unless Ritchie first excuses the default. To the extent Ritchie did not present Claim 1, 2, or 3 in any of the following proceedings, the claim is defaulted. *See Gray*, 518 U.S. at 162.

In November 2005, Ritchie submitted a *pro se* motion to withdraw his guilty plea or, in the alternative, to remove his five-year parole restriction. This motion is discussed in the following section. But, for present purposes, Ritchie averred that he "was on S.S.I. for mental disability at the time i pled so I did as my x-wife and attorney told me," and he claimed the plea agreement bound the trial court. *Pro Se* Mot. (Doc. 38-19) at 4. He did not allege that counsel was ineffective for failing to investigate his competence or that there was any defect in the trial court's plea colloquy. Therefore, the motion did not present Claims 1, 2, or 3.

In November 2007, Ritchie filed a petition for postconviction relief in the trial court. The trial court's file evidently does not contain the petition, so there is no record of what claims Ritchie asserted. But, even if the petition included Claims 1, 2, and 3 exactly as they are presented here, Ritchie did not appeal when the petition was dismissed as unverified, time-barred, and waived in the plea agreement. Order Dismissing Pet. (Doc. 38-30) at 4. Because Ritchie did not

4

"give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999), his postconviction petition did not exhaust any claims for purposes of federal review.

Finally, in March 2009, Ritchie filed a 58-page petition for writ of habeas corpus in the Montana Supreme Court. Ritchie asserted that his guilty plea was involuntary because he was mentally incompetent and under the influence of prescription pain medication; that he pled guilty only to theft and criminal mischief, not to burglary; and that counsel was ineffective because she failed to advise him about the possibility that he would not be eligible for parole. *See generally* State Habeas Pet. (Doc. 38-37). On June 9, 2009, the Montana Supreme Court denied the petition because Ritchie did not demonstrate his custody was "facially invalid."[2] Order at 3, *Ritchie v. Ferriter*, No. OP 09-0120 (Mont. June 9, 2009), *available at* https://supremecourtdocket.mt/gov (accessed Oct. 27, 2016); *see also Lott* v. *State*, 150 P.3d 337, 342 ¶ 22 (Mont. 2006). In other words, the writ of habeas corpus is not among the "remedies available" under state law for the purpose of challenging the validity of a conviction. *See* 28 U.S.C. § 2254(b);

---

[2] The court also noted the federal court's decision finding Ritchie competent and stated it would not further consider the issue of his competence. Ritchie's federal petition asserts that counsel was ineffective for failing to investigate his competence, not that he was in fact incompetent. Those are two different claims, governed by different legal standards applied to different facts. Therefore, even if the Montana Supreme Court's decision is construed to go to the merits of the competency issue, it was not a decision on the merits of Claim 1, nor did Ritchie fairly present Claim 1 to the Montana Supreme Court.

Mont. Code Ann. § 46-22-101(2) (2007); *Pitchess v. Davis*, 421 U.S. 482, 488 (1975) (per curiam). To whatever extent Ritchie's claims in the state habeas petition are the same as Claims 1, 2, or 3 in this Court, the Montana Supreme Court declined to consider them based on his failure to comply with an adequate and independent state procedural rule. And that means they are defaulted in this Court. *See, e.g.*, *Coleman v. Thompson*, 501 U.S. 722, 729-32 (1991); *Ford v. Georgia*, 498 U.S. 411, 424 (1991); *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985).

Thus, Claims 1, 2, and 3 are all defaulted and barred unless Ritchie can excuse his failure to properly exhaust his state remedies.

## B. Excusing Procedural Default

### 1. Actual Innocence

One means of excusing procedural default is to show actual innocence. *See, e.g.*, *Smith*, 510 F.3d at 1140 (citing *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995), and *House v. Bell*, 547 U.S. 518, 536-37 (2006)). Actual innocence is "factual innocence, not mere legal insufficiency," and must extend to any serious dismissed or unfiled charges the prosecution gave up in plea negotiations. *Bousley v. United States*, 523 U.S. 614, 623-24 (1998).

Ritchie has not suggested he has evidence proving it is more likely than not that no reasonable juror could find him guilty of burglary, theft, or other, more serious charges dismissed under the plea agreement, such as the persistent felony

6

offender designation. His default is therefore not excused by actual innocence.

## 2. Cause and Prejudice

The second means of excusing procedural default is to show cause—that is, some objective factor external to the petitioner that prevented him from presenting his claims in state court—and prejudice from the constitutional claims he asserts. *See, e.g.*, *Cook v. Schriro*, 538 F.3d 1000, 1027 (9th Cir. 2008) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)); *Smith*, 510 F.3d at 1148 (quoting *Coleman*, 501 U.S. at 750).

Although the State asserts that Ritchie's "pleadings" do not allege cause and prejudice,[3] *see* Resp't Br. (Doc. 109) at 5, Ritchie uses Claim 4 in precisely that way. He argues cause and prejudice at length, based on Worthington's abandonment of Ritchie in collateral review. *See* Pet'r Br. (Doc. 108) at 9-16. Abandonment by counsel is a recognized cause to excuse procedural default, *see, e.g.*, *Maples v. Thomas*, __ U.S. __, 132 S. Ct. 912, 922-24 (2012), as is representation by an attorney who interferes with a petitioner's ability to pursue collateral relief, *see, e.g.*, *Manning v. Foster*, 224 F.3d 1129, 1131-35 (9th Cir. 2000). The question is whether, under the circumstances of this case, Ritchie's counsel truly abandoned him or interfered with or obstructed his opportunity to pursue collateral relief.

---

[3] So far as the Court is aware, a showing of cause and prejudice is not a pleading requirement.

In addition, Ritchie also refers to *Martinez v. Ryan*, __ U.S. __, 132 S. Ct. 1309 (2012). *Martinez* is discussed below in Part D.

## C. Is Claim 4 Cause to Excuse Ritchie's Default of Claims 1, 2, and 3?

### 1. Undisputed Facts

The following facts, central to Claim 4, do not appear to be disputed. Because the dates and number of Ritchie's competency evaluations are not clear in the record, the Court takes judicial notice of its own records to clarify them. *See* Fed. R. Evid. 201(b)(2); *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011); *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) ("a court may take judicial notice of its own records in other cases").

In 2003, Dr. Susan Day evaluated Ritchie's ability to maintain gainful employment and to manage his own finances. She found he was unable to do either. Ritchie qualified for social security disability payments that were received and managed by his ex-wife, Gina Ritchie. *See* Bach Report at 1 (Doc. 1-2 at 17).

In January 2005, Ritchie was charged with various offenses in Montana's Twenty-First Judicial District Court, Ravalli County. In June 2005, *see* Case Register Report (Doc. 38-1) at 2 Entries 21-24, he pled guilty to burglary, theft, and criminal mischief. The State did not agree to recommend a specific sentence, but it agreed to dismiss charges of forgery, assault with a weapon, and partner or

family member assault as well as its persistent felony offender notice.[4] It also agreed not to seek any restriction on Ritchie's parole eligibility or a total sentence of more than ten years. Plea Agreement at 2 ¶¶ 2-3 (Doc. 1-1 at 12); Informations (Doc. 1-1 at 3-5, 7-9). The State fulfilled its agreements.

Although the State did not seek a parole restriction, the trial court imposed one, sentencing Ritchie to serve ten years in prison with no parole for the first five years. Judgment was entered on August 29, 2005. Judgment at 3-4 ¶¶ 2-3 (Doc. 101 at 28-29); Case Register Report (Doc. 38-1) at 2 Entry 31. Ritchie did not appeal. His conviction became final on October 28, 2005. *See Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 654-55 (2012).

On October 6, 2005, Ritchie applied for sentence review. *See* Case Register Report (Doc. 38-1) at 3 Entry 39.

On November 25, 2005, Ritchie, acting *pro se*, submitted to the trial court a form pleading designed to be used by prisoners seeking to withdraw their guilty pleas. Ritchie added qualifying language to the form language; for instance, he wrote by hand the phrase "in the alternative to strike the parole rest[r]iction" under the form's preprinted phrase "motion to withdraw a plea of guilty." *See Pro Se* Mot. (Doc. 105-3) at 1. He also stated, without elaboration, that he "was on S.S.I.

---

[4] At the least, persistent felony offender designation replaces what would otherwise be the maximum sentence for a particular felony with a maximum sentence of 100 years and a minimum sentence of five years. *See* Mont. Code Ann. § 46-18-502(1).

for mental disability at the time i pled so I did as my x-wife and attorney told me." *Id.* at 3. Nothing in Ritchie's own writing asked for leave to withdraw his plea; he wrote in his request that "the parole restriction be lifted and 5 years be suspended as promis[]ed for a plea of guilty." *Id.*

On January 19, 2006, the trial court dismissed the motion on the grounds that Ritchie was represented by counsel and ordered the clerk to forward the motion to counsel Keithi Worthington. *See* Worthington Dep. Ex. D (Doc. 105-4) at 1; Cover Letter (Doc. 38-20) at 1. In deposition in this matter, Worthington testified that she did not recall receiving a copy of Ritchie's *pro se* motion or talking to him about it, but she would have filed a motion to withdraw Ritchie's guilty plea if she thought such a motion would have any merit. *See* Worthington Dep. (Doc. 105) at 76:12-81:6. She was aware there was a time limit for filing a post-judgment motion to withdraw a guilty plea. *Id.* at 85:5-8. Worthington also testified that she likely represented Ritchie in sentence review proceedings, although she did not believe it was a good idea to pursue sentence review. *Id.* at 41:5-43:15.

In February 2006, Ritchie was writted out of state custody and charged in this Court with federal crimes. *See generally* Order (Doc. 4), *United States v. Ritchie*, No. CR 07-07-H-CCL (D. Mont. filed Mar. 2, 2006); Minutes (Doc. 5),

*Ritchie*, No. CR 07-07-H.[5]

In a letter dated March 6, 2006, Worthington advised Ritchie that sentence review proceedings had been continued due to his federal arrest. She stated that she "[i]n the meantime . . . will be finalizing the motion to the District Court[6] regarding these charges. That way we will have the District Court option in the event we are not successful at sentence review." Letter of Mar. 6, 2006, at 1 (Doc. 1-2 at 15). The letter does not describe the nature of the "motion" intended. Worthington never filed a motion to withdraw Ritchie's guilty plea.

In April 2006, Ritchie's counsel in the federal criminal case, Doreen Antenor, moved for an evaluation of his competency. The motion was granted, and Ritchie was sent to a Federal Bureau of Prisons facility for evaluation. *See* Mot. (Doc. 13), Order (Doc. 14), *Ritchie*, No. CR 07-07-H. In a report dated September 16, 2006, two BOP psychologists, Dr. Tehrani and her supervisor, Dr. Ihle, reported that Ritchie was competent to proceed. *See* Tehrani Report (Doc. 29) at 1 (showing date of report), Nunc Pro Tunc Order (Doc. 33) at 3, *Ritchie*, No.

---

[5] This case was originally filed in the Missoula Division as No. CR 06-11-M-DWM. On May 9, 2007, it was transferred to the Helena Division and reassigned to Senior United States District Judge Charles C. Lovell for trial. Judge Lovell dismissed the charges on September 10, 2007, for violation of the Speedy Trial Act. *See* Order (Doc. 67), *Ritchie*, No. CR 07-07-H. Ritchie was charged anew in the Missoula Division and again writted out of state custody. *See, e.g.*, Order (Doc. 4), *United States v. Ritchie*, CR 07-67-M-DWM (D. Mont. Oct. 15, 2007). Except for a six-week hiatus in the fall of 2007, when he was returned to state custody, Ritchie remained in custody on federal writs of habeas corpus *ad prosequendum* from February 2006 until his federal sentencing on July 23, 2008. Throughout this time, and possibly beyond, Ritchie's application for sentence review was pending but suspended.

[6] "District Court" means the trial court.

11

CR 07-07-H.

As to Ritchie's state conviction, on Monday, October 30, 2006, his time to file a motion to withdraw his guilty plea or a petition for postconviction relief expired. *See* Mont. Code Ann. §§ 46-16-105(2), 46-21-102(1) (2005).

On November 1, 2006, United States District Judge Donald W. Molloy found Ritchie competent to proceed in the federal case. Nunc Pro Tunc Order (Doc. 33) at 3, *Ritchie*, No. CR 07-07-H. In the same month, Ritchie underwent another evaluation. In a report evidently received by Antenor in January 2007, Dr. Paul Bach found, in part, that Ritchie had "significant cognitive impairment, primarily with memory and judgment," indicating he had "a defective mental state at the time of the offense" that also "greatly mars his ability to assist with his defense" and "diminishes his capacity to conform to the law." *See* Bach Report at 1 (showing fax stamp and counsel's phone number); *id.* at 6 (Doc. 1-2 at 17, 22).

On January 4, 2007, Worthington moved the state trial court to appoint the public defender's office to represent Ritchie because she had wound up her practice in connection with new employment by the City of Missoula. The motion to substitute referred only to Ritchie's still-pending application for sentence review. Mot. to Substitute (Doc. 38-27) at 1-2. The trial court granted the motion on January 9, 2007. Order (Doc. 38-27) at 1.

Despite Dr. Bach's report and his testimony at a hearing on January 9, 2007,

Judge Molloy again found Ritchie competent to proceed in the federal case on February 23, 2007. *See* Minutes (Doc. 27); Nunc Pro Tunc Order (Doc. 33) at 3-4, *Ritchie*, No. CR 07-07-H.

## 2. Findings of Additional Relevant Facts and Conclusion

For two reasons, the Court finds that the "motion" Worthington mentioned in her letter of March 6 was a motion to withdraw Ritchie's guilty plea. First, the letter was written about six weeks after the trial court forwarded to Worthington Ritchie's *pro se* motion and directed her to consult with him. Neither Worthington's deposition nor any other evidence or indication in the record suggests Worthington and Ritchie contemplated any other kind of motion, such as a motion for new trial based on newly discovered evidence.

Second, Ritchie wrote counsel a letter, evidently in response to Worthington's letter of March 6.[7] *See* Worthington Dep. Ex. B (Doc. 105-2) at 1. Neither party relies on this letter in the briefing, but it is compelling evidence clarifying Ritchie's intentions and discussions with counsel at the pertinent time. Ritchie's letter was received in Worthington's office on March 9, 2006, three days after Worthington's letter to Ritchie. *See* Worthington Dep. at 43:16-45:10. In his letter, Ritchie refers directly to the motion the trial court characterized in its January 2006 order as a motion to withdraw the guilty plea. *See* Worthington Dep.

---

[7] This letter and Worthington's deposition are new evidence not previously available to the Court.

Ex. D (Doc. 105-4) at 1; Cover Letter (Doc. 38-20) at 1.

The Court finds that Worthington did not promise Ritchie she would file anything. She told him she would finish preparing a motion to withdraw his guilty plea "in the event we are not successful at sentence review." Letter of Mar. 6, 2006, at 1 (Doc. 1-2 at 15).

Worthington's office received Ritchie's response three days later. Ritchie said:

> Keithi, I got your notice.
>
>       . . .
>
>       Anyway, I just wanted to point out that the motion I made was not a withdrawal of plea—it was a modification of sentence petition. And I meant it to address the same desire as I argue in sentence review and I intend to in "post conviction appeal."
>       [star] "Force them to hold to the plea bargain
>       The only thing I question is, why doesn't my motion be heard first?
>       Ok. Thanks for helping. . . .

Worthington Dep. Ex. B at 1 (emphases in original).

Ritchie was asking why all this other business—sentence review, postconviction relief, and so on—was necessary, that is, why they could not just file a motion to get the parole restriction removed. This letter is evidence, as Ritchie suggests, that he did not understand that the plea agreement did not prevent the trial court from imposing the parole restriction. *See, e.g.*, Pet'r Br. at 22-24; Reply at 11-12. The letter may also be evidence that Ritchie did not understand what a motion to withdraw his guilty plea would mean if granted. But it is clear

14

evidence that Ritchie was prepared to use not only his "modification of sentence petition" but also the procedures for sentence review and postconviction relief to try to enforce the plea agreement, not to argue that his plea was involuntary or incompetent. Enforcing the plea agreement is the opposite of withdrawing the plea. Based on Ritchie's letter, the Court finds that he understood perfectly well what a plea bargain was, that it gave him certain rights, and that steps could be taken to enforce them. He simply misunderstood one of the agreement's terms.

Worthington's problem was that Ritchie had no legal leg to stand on, because the plea agreement did not do what he thought it did. No argument could be made as to breach or specific performance. The agreement did not bind the trial court, and the State fulfilled every promise it made. *See* Worthington Dep. Ex. A (Doc. 105-1) at 2 ¶ 6; Worthington Dep. at 36:5-38:6;[8] Mont. Code Ann. § 46-12-

---

[8] Worthington was asked in deposition about the meaning of the word "open," which she wrote in to the waiver of rights form. She said she "believe[d]" that in Ravalli County at the time (11 years before her deposition), an "open" plea agreement meant the defendant *could* withdraw the guilty plea if the judge did not "follow" the plea agreement, but she was not certain her recollection was correct. Worthington Dep. at 38:7-23. In the Plea Agreement, the word "open" is explained to mean "there is no agreement regarding the sentence in this matter except as outlined above. The Court could impose the maximum sentence allowed by law. . . . 31 years imprisonment." Plea Agreement at 2 ("Forms of Sentence") (Doc. 1-1 at 12).

The word "open" does not appear in the governing statute. Contrary to Ritchie's claim, *see* Pet'r Br. at 22-23; Reply Br. at 11-12, the question whether Ritchie could withdraw his plea did not have one unambiguous answer. The trial court could have rejected the entire plea agreement if it believed it was inappropriate to dismiss the other charges and/or the persistent felony offender notice. In that case, Ritchie *would* have been able to withdraw his guilty plea. *See* Mont. Code Ann. § 46-12-211(1)(a), (2). If the court imposed a sentence beyond whatever term the State recommended, Ritchie would *not* have been able to withdraw his guilty plea. *Id.* § 211(1)(c), (2). As the current lack of clarity shows, this is not the easiest thing in the world to understand. The answer depends on what question is asked. The fact that a defendant might

15

211(1)-(3) (2003). Montana law does not recognize a "modification of sentence petition," nor is a defendant's dissatisfaction with one provision in a sentence a reason to remove it. A sentence within the parameters set by law is not appealable to the Montana Supreme Court. It can only be reviewed by the Sentence Review Division of the Montana Supreme Court. *See Jordan v. State*, 194 P.3d 657, 661 ¶ 18 (Mont. 2008); *Ranta v. State*, 958 P.2d 670, 676 ¶ 27 (Mont. 1998). Sentence review, where Ritchie already had an application pending, was the appropriate place for him to be, because that was the only way to obtain "modification" of a sentence.[9]

There was, of course, one way for Ritchie to invalidate the five-year parole restriction—filing the motion Worthington had told him on March 6 she would have ready to go "in the event we are not successful at sentence review." Letter of Mar. 6, 2006, at 1 (Doc. 1-2 at 15). But a motion to withdraw the guilty plea carried a very high price tag. If the motion was granted, that would mean

form the wrong idea, especially looking back months after sentence is imposed, does not necessarily suggest he was incompetent when he pled guilty.

Whether Worthington told Ritchie he could or could not withdraw his guilty plea if he did not receive the sentence he expected, there is no evidence that Ritchie *ever* told Worthington he wanted to withdraw his guilty plea and start over. Ritchie's letter shows the opposite.

[9] Worthington reasonably thought even that was not a good idea. Worthington Dep. (Doc. 105) at 41:5-7, 80:6-15, 84:25-85:4, 89:14-19. The Sentence Review Division has the power to increase a sentence—or a parole restriction—as well as the power to decrease or maintain the sentence. *See* Mont. Code Ann. § 46-18-904(1)(a)(ii) (2003); *see also, e.g., Jordan*, 194 P.3d at 659 ¶ 7 (sentence increased from 24 to 40 years, with further restriction on parole eligibility); *Ranta*, 958 P.2d at 672 ¶ 10 (sentence increased from two to ten years); *id.* at 674 ¶ 22 (noting that "in at least one [prior] case," a dissenting judge "wanted the review division to consider imposing the death penalty for the defendant.").

16

reinstatement of all the dismissed charges, as well as the persistent felony offender notice, *see* Case Register Report (Doc. 38-1) at 2 Entries 21-24, trial or further plea negotiations, and likely another sentencing hearing. Ritchie could have received an overall sentence of more than ten years with the same or a longer parole eligibility restriction. Worthington thought the existing plea agreement was very favorable to Ritchie, "a win," because it was "a generous offer of only 10 years total and 5 incarceration." She was "pleasantly surprised at how this resolved," "given the amount of evidence that they had against Mr. Ritchie" and in view of his "very lengthy" and "well known" criminal history: "I think he made the Ravalli Republic, I mean, there was a picture of him with his criminal history spilling down the stairs." Worthington Dep. at 74:6-75:14. As Ritchie has produced no evidence that Worthington's assessment of the agreement was unreasonable, there is every reason to infer that withdrawing the plea would have been a bad choice. And Ritchie's fixation on removal only of the parole restriction clearly indicates he did not intend to invoke "the District Court option"—more accurately, the nuclear option.

Worthington correctly understood that Ritchie was not talking about withdrawing his guilty plea and starting over: "he's not saying he's not guilty, he's saying he's unhappy with the sentence." Worthington Dep. at 85:21-23. There is no evidence that Ritchie told Worthington he did not understand what he had done

in pleading guilty. There is no evidence that he told her he did not commit the crimes he pled guilty to. These claims might have weighed in favor of moving to withdraw the guilty plea, but Ritchie did not make them. There is no evidence that Worthington should have known she had done or failed to do something that could amount to malpractice or ineffective assistance, *see Manning*, 224 F.3d at 1131, or even that Ritchie ever indicated he thought she had. His response to counsel's March 6 letter gives no indication that he expected her to do anything while sentence review remained a possibility.

Thus, Claim 4 comes down to the fact that Worthington let the time for filing a motion to withdraw the guilty plea expire without comment or action on her part. It may well have been unreasonable for her to do that if keeping quiet served her own interests or disserved Ritchie's, but, again, there is no reason to suspect it did. Ritchie did not want to withdraw his guilty plea. He wanted his sentence to be different. Worthington reasonably thought it would be unwise to withdraw the guilty plea. Worthington did not "abandon" Ritchie by failing to file a motion to obtain relief Ritchie did not want.

Nor is there any evidence that Worthington interfered with Ritchie's ability to file a petition for postconviction relief[10] by acting "only on her . . . own behalf."

---

[10] The one-year period Ritchie had to file a motion to withdraw his guilty plea was the same one-year period he had to file a petition for postconviction relief. *See* Mont. Code Ann. §§ 46-16-105(2), -21-102(1) (2003).

*See Manning*, 224 F.3d at 1135. Unlike *Manning*, here there is no evidence Worthington told Ritchie he had no remedies when in fact he did. Ritchie's letter referred to a "postconviction appeal," but there is no evidence he expected Worthington to pursue it. Worthington did not obstruct Ritchie's opportunity to seek postconviction relief.

Worthington did not abandon Ritchie or in any way hinder him from seeking any form of collateral relief. Claim 4 is not cause to excuse Ritchie's default of Claims 1, 2, or 3.

Claims 2 and 3 should be dismissed as procedurally defaulted without excuse. Two more issues must be addressed in connection with Claim 1.

### D. Does *Martinez v. Ryan* Excuse Default of Claim 1?

#### 1. Application and Scope of *Martinez*

In States where "the . . . procedural system—as a matter of its structure, design, and operation—does not offer most defendants a meaningful opportunity to present a claim of ineffective assistance of trial counsel on direct appeal," lack of counsel or representation by counsel who performs unreasonably is cause to excuse default of a substantial claim of ineffective assistance of counsel. *Trevino v. Thaler*, __ U.S. __, 133 S. Ct. 1911, 1921 (2013); *Martinez*, 132 S. Ct. at 1320.

As to non-record-based claims of ineffective assistance of trial counsel, Montana is such a State. *See, e.g.*, Findings and Recommendation (Doc. 50) at 6-

26, *Miller v. Kirkegard*, No. CV 13-13-GF-DWM-JTJ (D. Mont. May 20, 2015);

Order (Doc. 43) at 4-11, *Gunderson v. Kirkegard*, No. CV 13-35-BLG-CSO (D.

Mont. Jan. 30, 2015).

*Martinez* applies, however, only to defaulted claims alleging ineffective

assistance of counsel. *Martinez*, 132 S. Ct. at 1317-18; *see also Nguyen v. Curry*,

736 F.3d 1287, 1296 (9th Cir. 2013) (extending *Martinez* to defaulted claims

alleging ineffective assistance of appellate counsel). As Claims 2 and 3 are not

ineffective assistance claims, *Martinez* cannot excuse Ritchie's default of those

claims.

## 2. Did Worthington Perform Unreasonably as Collateral Counsel?

Nor, in the end, does *Martinez* excuse Ritchie's default of Claim 1.

Worthington did not perform unreasonably in any collateral proceeding. She had a

good reason for not pursuing a motion to withdraw Ritchie's guilty plea: Ritchie

did not want to withdraw his guilty plea. There is no evidence that Ritchie

expected her to pursue postconviction relief on his behalf.

Ritchie claims Worthington should have known in March 2006 (or sooner)

that Ritchie's competence to assist in his own defense was questionable.[11] But, as

---

[11] He also contends that, if only she had moved to withdraw his guilty plea, she "could have presented Dr. Bach's findings to the state district court to support Ritchie's claims that he should be allowed to withdraw his plea because he was incapable of entering a knowing, intelligent, and voluntary plea." Pet'r Br. at 15. Ritchie's deadline for collateral relief was October 30, 2006. Dr. Bach did not meet Ritchie until November 2006. His report was not available until January 2007.

noted above, there is no evidence that Ritchie told her he did not understand what he had done in pleading guilty. He indeed failed to understand that the plea agreement did not mean what he thought it meant, but misunderstanding is not incompetence. He understood the larger point of what a plea bargain was and what it might do for him.

To show that Worthington should have known he needed a competency evaluation, Ritchie relies on two points: attorney Antenor moved for an evaluation in the federal criminal case in early April 2006, and Worthington knew Ritchie was on social security disability. Taking the second point first, even if Worthington knew Ritchie's disability benefits were due to mental defects, her own ability to work with him was a direct gauge of his ability to understand the proceedings and assist in his own defense, and form requisite *mens rea*—far more so than a finding by the Social Security Administration that he was unable to hold gainful employment over an eight-hour day or responsibly manage his finances.

As for Antenor's motion in the federal case, it is telling that Ritchie does not say Worthington *knew* Antenor moved for a competency evaluation in April 2006. He says only that the fact Antenor sought an evaluation must mean that Worthington should have done so too. *See* Pet'r Reply (Doc. 110) at 9. But the difference between the lawyers' approaches could mean several things. It could mean Worthington was purblind, or it could mean Antenor was gullible. It could

21

mean Antenor had greater expertise in mental health issues or fewer options for a good resolution of the charges. It could mean that Worthington got along and communicated well with Ritchie and Antenor did not.

Finally, Worthington testified that she considered competency in Ritchie's case just as she did in every case, and she found no reason to question his competency. *See* Worthington Dep. at 13:15-14:11, 15:8-11, 16:22-17:4. Her observations of Ritchie were strikingly consistent with this Court's observations at an evidentiary hearing in this matter on October 2, 2013. [12]

Worthington described Ritchie, in his conversations with her, as "very savvy," "absolutely clear, coherent," ready to suggest "how to investigate [the] case, who to talk to," and capable of "discuss[ing] issues in depth." *See generally* Worthington Dep. (Doc. 105) at 17:6-21:1.

After describing Dr. Bach's report about Ritchie, which found significant deficits in his cognition, memory, and functioning and concluded he was unable to assist counsel or make good decisions, this Court said its own "observations of Ritchie on the witness stand created an entirely different impression":

> Not only did Ritchie remember many facts and details when
> motivated to do so, he related them clearly in his testimony. He

---

[12] The kind of competency at issue in the hearing was governed by different standards than competency issues presented in the trial phase of a case. *Compare Bills v. Clark*, 628 F.3d 1092, 1099-1100 & n.3 (9th Cir. 2010), *with Drope v. Missouri*, 420 U.S. 162, 171 (1975); *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam). But the point is that the Court looked for signs of serious cognitive, intellectual, or other functional defect and saw none.

22

responded to questions appropriately, showing not only that he understood the question but also, frequently, the point in asking it. *See, e.g.*, Evid. Hr'g Tr. (Doc. 85) at 56:20-57:13, 58:18-22, 61:17-62:7, 67:3-4, 70:15-72:23, 78:8-15, 79:18-80:5. It is difficult to imagine that the person who testified at the hearing was functioning at a lower level of reasoning and conceptualization than 99% of the general population; or, if Ritchie was functioning at so low a level, then no more is required to make a person capable of taking steps to assert his legal rights. Ritchie's testimony indicated he would have been able to work with others to prepare and file a habeas petition.

In addition, nothing in Dr. Bach's evaluation or in the testimony presented at the hearing suggests that Ritchie's cognitive or intellectual functioning was subject to change. In other words, there is no evidence Ritchie's functioning may have been worse while the federal limitations period was running than it is now.

Findings and Recommendation (Doc. 91) at 8.[13]

It comes as no surprise to this Court that Worthington saw no reason to question Ritchie's competency. There is no evidence to support a finding that Worthington performed unreasonably in failing to perceive a need for expert guidance on Ritchie's competency. By watching Ritchie in court and listening to him testify, this Court has already found evidence strongly to the contrary.

### 3. Is Claim 1 a Substantial Claim?

Even if Worthington had performed unreasonably in collateral proceedings, *Martinez* could excuse Ritchie's default of Claim 1 only if Claim 1 is a *substantial*

---

[13] Other matters mentioned by Ritchie also fail to persuade. Ritchie correctly points out that his wife, Gina, gave "unrefuted" testimony in the evidentiary hearing in this Court about Ritchie's mental issues. *See* Pet'r Br. at 18-20. Unrefuted testimony is not necessarily credible; the basis for Gina's observations, and even their content, was not exactly free of doubt. *See* Evid. Hr'g Tr. (Doc. 85) at 6:15-25:3. Although it is possible that someone told Worthington Ritchie's social security disability status was rooted in mental deficits, it is also possible no one did. The available evidence does not point in either direction.

claim of ineffective assistance of trial counsel. A claim is *in*substantial if "it does not have any merit or . . . it is wholly without factual support." *Martinez*, 132 S. Ct. at 1319. Or, to put it another way, a claim of ineffective assistance is "substantial" if it is at least "adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003), *cited in Martinez*, 132 S. Ct. at 1318-19; *see also Detrich v. Ryan*, 740 F.3d 1237, 1245-46 (9th Cir. 2013) (Fletcher, J., plurality op.); *id*. at 1261 (Graber, J., dissenting from the judgment but agreeing as to application and meaning of "substantiality" standard).

Although the substantiality standard is low, Claim 1 does not meet it. Worthington did not see an issue. The only evidence that she should have seen it in the underlying criminal proceedings in 2005 is the fact that Ritchie's ex-wife Gina was receiving social security disability payments on his behalf. As stated, Worthington's own ability to work with Ritchie was the best gauge of his ability to understand the proceedings and assist in his own defense as well as any serious mental disease or defect precluding him from forming the appropriate *mens rea*. The Court is not aware of any authority holding that a criminal defense attorney aware that a client is receiving disability payments must determine why and, if the reason involves mental issues, must seek expert input on the client's competency regardless of her own observations of the client.

Because Claim 1 is not substantial, *Martinez* does not excuse Ritchie's

default of it.

## 4. Conclusion

*Martinez* cannot excuse Ritchie's default of Claim 1. Worthington did not perform unreasonably either as collateral counsel or in the underlying criminal proceeding.

## III. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez*, 132 S. Ct. at 648 (quoting *Slack*, 529 U.S. at 484).

Ritchie's petition challenges the voluntariness and intelligence of his guilty plea. He was not asked to describe what he stole from the home he entered, and

there is no indication in either the plea colloquy or the plea agreement that he took things worth more than $1,000.00 in market value. In addition, Ritchie did not admit he intended to do anything inside the home that would have amounted to the commission of a felony. Ritchie's claims as to both the theft and the burglary charges, described herein as Claims 2 and 3, meet the relatively low threshold of 28 U.S.C. § 2253(c)(2). Claim 1, however, alleging that trial counsel was ineffective because she failed to obtain an expert opinion on Ritchie's competency before he pled guilty, does not meet the § 2253(c)(2) threshold; Ritchie's claim that he is or ever has been incompetent is not even close to convincing.

All three of Ritchie's claims are procedurally defaulted because he did not fairly present any of them in state court. With new evidence in counsel's deposition and a letter written to her by Ritchie, the Court sees no prospect of excusing Ritchie's failure to present Claims1, 2, and 3 in state court. He did not want to withdraw his guilty plea; he wanted a (slightly) different sentence than the one he received. Counsel correctly understood this fact. She did not "abandon" him by failing to file a motion to obtain relief he did not want and that could have seriously harmed his interests. Nor did she interfere in any way with Ritchie's ability to pursue any remedy, including modification of his sentence, the remedy he actually wanted but was not going to get.

*Martinez v. Ryan* could apply to excuse Ritchie's default of Claim 1,

because it is the only one alleging ineffective assistance of counsel. But Ritchie does not show either that trial counsel (who was also collateral counsel) performed unreasonably either in collateral proceedings or in the trial court.

A COA should be denied on all issues.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1. Claim 4 of the petition should be DENIED for failure to state a claim under 28 U.S.C. § 2254(a).

2. Claims 1, 2, and 3 should be DISMISSED WITH PREJUDICE as procedurally defaulted without excuse.

3. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

4. A certificate of appealability should be DENIED on all issues.

## NOTICE OF RIGHT TO OBJECT
## TO FINDINGS & RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may object to this Findings and Recommendation within 14 days.[14] 28 U.S.C. § 636(b)(1); D. Mont. L.R. 72.3. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the

---

14 As this deadline allows a party to act within 14 days after the Findings and Recommendation is "served," Fed. R. Civ. P. 6(d) applies, and three days are added after the time would otherwise expire.

right to appeal.

DATED this **7th** day of November, 2016.

Jeremiah C. Lynch
United States Magistrate Judge